[Civ. No. 16910. First Dist., Div. One. May 8, 1956.]

TOWN COUNCIL OF THE TOWN OF LOS GATOS et al., Appellants, v. THE STATE BOARD OF EQUALIZATION et al., Respondents; GIULIO A. BOCCI, Real Party in Interest.

J. Rainey Hancock for Appellants.

Edmund G. Brown, Attorney General, and Carl W. Wyncoop, Deputy Attorney General, for Respondents.

Albert Picard for Real Party in Interest.

AGEE, J. pro tem.*—On October 16, 1953, Guilio A. Bocci (applicant) filed with the State Board of Equalization (respondent) an application for the transfer of a general on-sale liquor license to his restaurant which is located at

_____

*Assigned by Chairman of Judicial Council.

42 Central Avenue, Los Gatos, California. From 1937 to 1942 this restaurant had had an on-sale distilled spirits license and an on-sale beer and wine license. In 1942, both licenses were transferred to a location near Saratoga, California. Thereafter the restaurant had no liquor license of any type until May 24, 1946, when an on-sale beer and wine license was issued to it.

On December 2, 1946, the town of Los Gatos adopted a comprehensive zoning ordinance (No. 276) effective January 1, 1947. The area in which the restaurant was located was zoned as a single family residential district, "R-1." However, the ordinance provided: "The lawful use of a building existing at the time of the adoption of this ordinance may be continued, although such use does not conform to the regulations specified for the district in which such building is located; . . ." Therefore, the restaurant was allowed to continue its existing operation.

When Bocci made his application to license the sale of distilled liquor on the premises, the town of Los Gatos filed a written protest with the board. The board nevertheless granted the application. The town then filed a petition in the superior court for a writ of mandate against the board to compel it to sustain the protest and deny the application. The petition was denied and the town of Los Gatos, hereinafter referred to as appellant, has appealed from the resulting judgment.

The only question on this appeal is whether the board had a right to grant Bocci's application in view of the existing zoning restrictions in the district in which the premises are located.

Appellant's position is that, while section 22 of article XX of the Constitution of the State of California, adopted November 6, 1934, provides that "The State Board of Equalization shall have the exclusive power to license the . . . sale of intoxicating liquors in this State," the same section further provides that, "Until the Legislature shall otherwise provide, the privilege of keeping, buying, selling, serving and otherwise disposing of intoxicating liquors in bona fide hotels, restaurants, cafés, cafeterias, railroad dining or club cars, passenger ships, and other public eating places, . . . shall be licensed and *regulated* under the applicable provisions of the so-called State Liquor Control Act, California Statutes 1933, Chapter 658, in so far as the same are not inconsistent with the provisions hereof." (Emphasis added.) It seems

clear that this constitutional amendment of 1934 authorizes the Legislature to limit the power of the board to license and regulate the sale of intoxicating liquor. Such a limitation is contained in the Statutes of 1935, at page 1130, wherein the Legislature amended section 15 of the Alcoholic Beverage Control Act, the first paragraph of which then provided as follows: ''No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county, city and county or municipality unless such premises had been used in the exercise of such rights and privileges at a time prior to the effective date of any such valid zoning ordinance.'' This provision is now contained in section 23790 of the Business and Professions Code, added in 1953. Appellant concludes by quoting from volume 5 of Attorney General's Opinions, at page 21: ''The California Legislature, acting under the authority conferred by Section 22, Article XX, did enact the Alcoholic Beverage Control Act referred to above. It vested in the State Board of Equalization the authority to issue various forms of licenses relating to the manufacture and sale of alcoholic beverages including on-sale beer licenses, on-sale beer and wine licenses, and on-sale distilled spirits licenses. But it limited, by the provisions of Section 15 of the Alcoholic Beverage Control Act, the right of the Board to issue retail licenses for premises located in any territory where the exercise of the rights and privileges conferred would be contrary to the provisions of a valid zoning ordinance of any county, city and county or municipality. . . . The language of the section [15] evidences a legislative intent to exercise its power to control and *regulate* the sale of intoxicating liquors by depriving the Board of authority to issue licenses in certain premises within a particular zoned area.''

Respondent argues that the adoption of section 22 of article XX terminated ''local option'' and precludes counties and cities from exercising any control over the issuance of granting of liquor licenses. There is no doubt that local option has been terminated. Zoning ordinances cannot single out and prohibit the sale of liquor as such. There must be a reasonable classification of districts and in any zoning district in which, for example, other retail businesses are allowed to be conducted, it might well be and probably would be unreasonable and arbitrary to exclude the sale of liquor. In such

a situation, it would be for the Board of Equalization (now Department of Alcoholic Beverage Control) to determine the propriety of granting liquor licenses to locations within such a district.

However, respondent's contention that the constitutional provision precludes counties and cities from exercising any control over the granting of liquor licenses overlooks the provisions of section 15 (now Bus. & Prof. Code, § 23790) quoted above. It is clear that the Legislature did confer upon counties and cities the right to control the districts in which various types of liquor business could be carried on by the enactment of valid zoning ordinances. In this instance, respondent expressly concedes that the zoning ordinance in question is valid. In other words, there is no question of improper or arbitrary zoning. It is true, of course, that the excluding of liquor business of any type in a certain zone does have the effect of denying (in advance) all applications for liquor licenses in that zone but, as stated before, this result is expressly authorized by said section 15, which in turn is legislation authorized by the 1934 constitutional amendment.

Respondent points out that there is no express or specific prohibition in the zoning ordinance against the sale of liquor in R-1 residential areas. This is true. But section 23790 only requires that there be (1) a valid zoning ordinance, and (2) that the exercise of the rights and privileges of the license sought to be issued would be *contrary* to its provisions. The section does not require a specific limitation against the sale of alcoholic beverages in a designated area. Section 1.1 of the zoning ordinance reads: "There is hereby adopted a Zoning or Districting Plan as a part of the Master Plan of the Town of Los Gatos, California. Said Plan is adopted to promote and protect the public health, safety, peace, morals, comfort and general welfare. It consists of the establishment of various districts, including therein all the territory within the boundaries of said Town within various of which districts it shall be lawful, and *within various of which it shall be unlawful* to erect, construct, alter or maintain certain buildings or *to carry on certain trades or occupations or to make certain uses of land."* (Emphasis added.) Section 2.1 establishes districts, among which are single family residential districts designated as "R-1." Section 2.4(a) provides that no building shall be used "for *any purpose* or in any manner, . . . *except as permitted* by and in conformity

to the regulations specified herein for the district in which such building . . . is located." (Emphasis added.) Section 5.1 provides: "The following regulations shall apply in all R-1 Districts . . .: (a) *Uses Permitted:* 1. One family dwellings, public parks and playgrounds, crops and tree farming and truck gardening; Home occupations provided that no name plate or sign exceeding 2 square feet in area shall be displayed in connection therewith; and provided further that such sign or name plate shall be attached to the main building and shall not project into any yard area." (Emphasis added.) Any fair reading of this zoning ordinance will reveal that the sale of alcoholic beverages in R-1 Districts is not a permitted use.

Respondent next calls attention to the exception contained in section 23790, which provides: "No retail license shall be issued . . . contrary to a valid zoning ordinance . . . *unless* the premises had been used in the exercise of such rights and privileges *at a time prior to the effective date of the zoning ordinance.*" (Emphasis added.) The zoning ordinance expressly authorizes the continuance of "the lawful use of a building *existing at the time* of the adoption of this ordinance," December 2, 1946. (Emphasis added.) However, the last time the premises had been used for the sale of distilled spirits was in the year 1942, so the saving clause in the ordinance does not apply. Therefore, the question is, if at *any time* in the past a particular type of liquor license had been issued to a certain location, is such location by reason thereof excepted from the application of a valid zoning ordinance? Or, in other words, is such a location permanently eligible for the issuance of such a license no matter how long ago the use in question had ceased? To answer in the affirmative does violence to the intent and purpose of such an exception or "saving clause" as that contained in section 23790. As was said in *Edmonds* v. *County of Los Angeles,* 40 Cal.2d 642, 651 [255 P.2d 772]: "The rights of users of property as those rights existed at the time of the adoption of a zoning ordinance are well recognized and have always been protected." It would seem clear that a reasonable interpretation of the language used in section 23790 to exempt a nonconforming use is that such use must exist at the time of the effective date of the zoning ordinance. Certainly, the Legislature did not intend that a use such as this, which had ceased for over four years before such effective date and for over eleven years before the application was made to

renew it, should be included in the exception granted by the last clause of section 23790.

█ Respondent next argues that its grant of the transfer of a general on-sale license is not an expansion or extension of a nonconforming use because the restaurant already had the right to sell wine and beer and the addition of the right to sell distilled spirits did not change the general use of the premises. However, there can be little doubt that the character of a business serving beer and wine may well change to a substantial degree when it adds the sale of hard liquor to its other commodities. To avoid being provincial, we quote from *Salerni* v. *Scheuy*, 140 Conn. 566 [102 A.2d 528] : "As a matter of common knowledge it is also true that ordinarily a restaurant with a full liquor permit is quite a different sort of enterprise from a restaurant which sells only beer. It is a more ambitious establishment, partaking to at least some degree of the characteristics of a night club rather than a quiet family eating place. The difference between the two types of restaurant is so great that the trial court was correct in its conclusion that to carry into effect the plaintiff's proposal to change their restaurant into one in which all kinds of liquor should be sold, would be an extension and enlargement of their existing nonconforming use of the property and would create a use of the property prohibited by the zoning ordinance." (Pp. 571-572.) We agree with this language and conclude that the granting of a general on-sale license was an unwarranted enlargement of a nonconforming use. █ As was said in *County of San Diego* v. *McClurken*, 37 Cal.2d 683 [234 P.2d 972] : "Given the objective of zoning to eliminate nonconforming uses, courts throughout the country generally follow a strict policy against their extension or enlargement." (P. 687.)

The judgment is reversed with instructions to issue the writ of mandate as prayed.

Peters, J., and Wood (Fred B.), J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied July 5, 1956. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.